**Kelly WAGNER, Plaintiff and Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, Defendant and Respondent.**

**No. 890316–CA.**

Court of Appeals of Utah.

Jan. 9, 1990.

Rehearing Denied Jan. 29, 1990.

M. David Eckersley, Salt Lake City, for plaintiff and appellant.

Don J. Hanson, Salt Lake City, for defendant and respondent.

Before GARFF, GREENWOOD and ORME, JJ.

GARFF, Judge:

Appellant Kelly Wagner, the surviving spouse of Thomas Wagner (Wagner), sought a declaratory judgment that she is entitled to uninsured motorist benefits in the amount of $100,000 pursuant to an insurance contract entered into between Wagner and respondent Farmers Insurance Exchange. The district court granted summary judgment to respondent. We affirm.

Wagner entered into an insurance contract with respondent to insure his 1979 Porsche 928. This contract named Wagner as the insured party and provided liability and uninsured motorist coverage.

On November 15, 1986, Wagner died as a result of injuries received in a single vehicle automobile accident. At the time of the accident, he was riding as a passenger in his insured Porsche, while Charles P. Lingle, who had no liability insurance, was driving with Wagner's permission. The accident was caused by Lingle's negligence.

Respondent paid Wagner's medical expenses, and funeral and death benefits under the no-fault provisions of the policy. It also offered to pay appellant $20,000 under the liability portion of the policy rather than $100,000, the face amount of the policy, for Wagner's death. Appellant rejected this offer and brought this declaratory judgment action, demanding the entire $100,000. Both parties, relying upon stipulated facts, submitted the case on cross-motions for summary judgment. The trial court ruled in favor of respondent. Appellant then brought this appeal.

The sole issue appellant raises is whether the provisions of the insurance policy which excluded coverage should be voided as against public policy because Wagner reasonably expected to be covered in such a situation when he purchased the policy. She argues that insurance policies are not typical contracts in which the terms are bargained for by the parties but are, instead, contracts of adhesion. She also argues that purchasers commonly expect to be fully covered by the insurance they buy, so the insurance contract should be essentially rewritten to fulfill Wagner's reasonable expectation of coverage.

On the other hand, respondent argues that an insurance policy is a contract and the written provisions should control unless: (1) the provisions are illegal or against public policy; (2) the provisions are ambiguous; or (3) one of the parties has misrepresented the provisions of the policy, leading the other party to have different expectations than the terms of the policy would dictate. Respondent asserts that none of these conditions are present here.

"[I]n the absence of ambiguity, we interpret the terms of an insurance policy according to their plain meaning." *Valley*

*Bank & Trust Co. v. United States Life Title Ins. Co.,* 776 P.2d 933, 936 (Utah Ct.App.1989); *see also Bear River Mut. Ins. Co. v. Wright,* 770 P.2d 1019, 1020 (Utah Ct.App.1989) (per curiam). Where an ambiguity appears in the terms of a policy, especially in an exclusion from coverage, we examine the language from the viewpoint of the average purchaser of insurance who is not trained in law or in the insurance business. *State Farm Mut. Auto. Ins. Co. v. Gibbs,* 139 Ariz. 274, 678 P.2d 459, 464 (Ct.App.1983); *see also Draughon v. CUNA Mut. Ins. Soc'y,* 771 P.2d 1105, 1108 (Utah Ct.App.1989). However, we construe any ambiguity in an insurance policy against the insurer and in favor of coverage. *LDS Hosp. v. Capitol Life Ins. Co.,* 765 P.2d 857, 858 (Utah 1988).

An insurer may limit its obligation to provide coverage by "exclusions phrased in language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 640 P.2d 764, 769, 180 Cal.Rptr. 628 (1982).

Wagner's insurance policy, written in a so-called "E–Z Reader" style, excludes "liability for bodily injury to an insured person" under its liability coverage section. Because this section defines an "insured person" as "[y]ou or any family member," Wagner, as the named insured, was excluded from coverage. This exclusion is clearly labelled and clearly stated.

Under the policy's uninsured motorist coverage section, respondent is obligated to "pay all sums which an insured person is legally entitled to recover as damages *from the owner or operator of an uninsured motor vehicle* because of bodily injury sustained by the insured person." (Emphasis added.) This obligation is limited by the requirement that "[t]he bodily injury must be caused by accident and arise out of the ownership, maintenance or *use of the uninsured motor vehicle.*" (Emphasis

added.) An "insured person" is defined in this section as "[y]ou or a family member," or "[a]ny other person while occupying your insured car." Thus, both Wagner and Lingle qualify as insured persons.

The general definitions describe an "insured vehicle" as "[t]he vehicle described in the Declarations of this policy or any private passenger or utility car with which you replace it." This section defines an "uninsured motor vehicle" as "a motor vehicle which is "[n]ot insured by a bodily injury liability bond or policy at the time of the accident." Under these definitions, Wagner's vehicle, because it was insured under this policy at the time of the accident, is not an "uninsured vehicle."

These provisions are clearly stated and do not contemplate the possibility of the insured vehicle also being the uninsured vehicle. Under these provisions, respondent is not obligated to pay for Wagner's damages.

However, under the "Other Insurance" provision of the liability coverage, respondent agrees to "provide insurance for an insured person, other than you or a family member, up to the limits of the Financial Responsibility Law only." [1] Under the definition of an "insured person" in the liability coverage section, Lingle is an insured person who would be legally liable for Wagner's injuries and death. Because Lingle qualifies as an "insured person," and is not Wagner or a family member, respondent is liable to pay $20,000, the minimum statutory amount of coverage, to appellant on Lingle's behalf. It is undisputed that respondent has offered to pay appellant $20,000 under this provision of the policy.

We find that the exclusions to coverage under this policy are clearly stated and that Wagner knew or should have known about them, and that respondent offered to pay appellant according to the terms of the contract.

---

1. The relevant provisions in the Financial Responsibility of Motor Vehicle Owners and Operators Act, Utah Code Ann. § 41–12a–301 (1986), and in the Insurance Code, Utah Code Ann. § 31A–22–304 (1986), require that "[p]olicies

containing motor vehicle liability coverage may not limit the insurer's liability under that coverage below … twenty thousand dollars because of bodily injury to or death of one person, in any one accident."

We recognize that "automobile insurance is generally sold through adhesion contracts that are not negotiated at arm's length," [2] and that "[p]urchasers commonly rely on the assumption that they are fully covered by the insurance that they buy." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236 (Utah 1985); *see also Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388, 395 (1984) (en banc). Where possible, we attempt to give effect to the reasonable expectations of the insured party.[3]

"[T]he reasonable expectations concept is quite troublesome, since most insureds develop a 'reasonable expectation' that every loss will be covered by their policy." *Id.* However, because of the necessity to balance this expectation against the need to keep the cost of insurance premiums relatively stable, its application must be limited. *See Allstate Ins. Co. v. United States Fidelity & Guar. Co.*, 619 P.2d 329, 333 (Utah 1980); *see also Zobrist v. Farmers Ins. Exch.*, 103 Nev. 104, 734 P.2d 699, 700 (1987) (per curiam).[4]

There are circumstances when the reasonable expections of the insured may counteract a clear exclusion in the policy. *See State Farm Mut. Auto. Ins. Co. v. Mastbaum*, 748 P.2d 1042, 1047 (Utah 1987) (Durham, J., dissenting). In *Gray v. Zurich Insurance Co.*, 54 Cal.Rptr. at 104, 419 P.2d at 168, the California Supreme Court reasoned:

Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect.

*Id.* 54 Cal.Rptr. at 107–08, 419 P.2d at 171–72 (footnotes omitted).

Provisions that are against public policy or against the reasonable expectations of the parties may be found void in appropriate circumstances. However, even this reasonable expectation concept must be limited by something more than "the fervent hope usually engendered by loss," such as the expectations that "have been induced by the making of a promise." *Darner Motor Sales*, 682 P.2d at 395 (quoting 1 Corbin, Contracts § 1 (1963)). Therefore, in making a judicial determination of such expectations, we examine the following interrelated factors: first, whether the insurer knew or should have known of the insured's expectations; second, whether the insurer created or helped to create these expectations; and third, whether the insured's expectations are reasonable. *See* Abraham, *Judge–Made Law And Judge–Made Insurance: Honoring The Reasonable Expectations Of The Insured*, 67 Va. L.Rev. 1151, 1179–80. To accomplish this determination, we examine, in addition to the wording of the contract, "extrinsic matters such as the intent of the parties, the purpose sought to be accomplished, the subject matter of the contract, and circumstances surrounding the issuance of the policy." *Bonner County v. Panhandle Rodeo Ass'n, Inc.*, 101 Idaho 772, 620 P.2d 1102, 1106 (1980); *see also* Restatement

---

**2.** An adhesion contract is defined as "a contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis. . . .'" *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 107, 419 P.2d 168, 171 (1966).

**3.** Reasonable expectations include "what the weaker contracting party could legitimately expect by way of services according to the enterpriser's 'calling', [sic] and to what extent the stronger party disappointed reasonable expecta-tions based on the typical life situation." *Gray*, 54 Cal.Rptr. at 108, 419 P.2d at 172 (quoting Kessler, *Contracts of Adhesion*, 43 Colum.L.Rev. 629, 637 (1943)).

**4.** "An insurer has the right to contract with an insured as to the risks it will or will not assume, as long as neither statutory law nor public policy is violated. Thus an insurer may include in a policy any number or kind of exceptions and limitations to which an insured will agree unless contrary to statute or public policy." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 233 (Utah 1985).

(Second) of Contracts § 211 comment f (1981).[5]

If the evidence indicates that the insurer knew or should have known of the insured's expectation or that he created or helped to create this expectation, equity weighs heavily in favor of holding the insurer to fulfill the insured's expectation. Abraham, *Judge–Made Law And Judge–Made Insurance: Honoring The Reasonable Expectations Of The Insured*, 67 Va. L.Rev. 1151, 1180 (1981); *see also* Restatement (Second) of Contracts § 211(3) (1981). An insurer may be found to know of an insured's reasonable expectation from prior negotiations or other circumstances, or such knowledge may be inferred if a term in the contract eliminates the dominant purpose of the transaction. Restatement (Second) of Contracts § 211 comment f (1981). This is especially true if an insured never has the opportunity to read the term in the contract. *Id.*

In making a judicial determination of reasonable expectations, we rely upon extrinsic evidence surrounding the making of the insurance contract. Because the facts are undisputed in the present case, we accord the trial court's conclusions no particular deference, but review for correction of error. *Sacramento Baseball Club, Inc. v. The Great N. Baseball Co.*, 748 P.2d 1058, 1060 (Utah 1987); *Knight v. Post*, 748 P.2d 1097, 1099 (Utah Ct.App.1988).

We first examine whether respondent knew or should have known of Wagner's supposed expectation of uninsured motorist coverage for injuries to himself while riding as a passenger in his insured vehicle being driven by an uninsured permissive driver. After a thorough review of the record, we find that appellant presented no evidence that Wagner specifically contemplated this situation in purchasing the insurance policy, but only presented unsupported suppositions and allegations. There is no evidence, whatsoever, that Wagner ever contemplated the present set of circumstances. Therefore, there is no compelling evidence that respondent knew or should have known of this expectation.

Second, we must determine whether respondent created or helped to create Wagner's alleged expectation of coverage. The insurance agent who sold respondent's policy to Wagner testified that he did not have any specific recollection of his negotiations with Wagner, but indicated that it was his habit, in describing the scope of respondent's uninsured motorist coverage, to explain that, "[i]f you are involved in an accident which you are not at fault and you are injured and that person does not have liability insurance to cover your medical costs, that you have that coverage available under the uninsured motorist [provisions]." If anything, this statement understates the extent of coverage in the situation at issue, only indicating that the insured's medical costs would be covered. Therefore, we find that respondent, through its agent, did not create or help to create Wagner's alleged expectation of coverage.

---

5. The Arizona Supreme Court, in *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d at 388, adopted the standard contained in the official comment to the Restatement (Second) of Contracts as its standard for limiting the reasonable expectation of the insured. This standard is comparable to the factors we have listed above. The comment reads as follows:

> Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation.... [An insured] who adheres to the [insurer's] standard terms does not assent to a term if the [insurer] has reason to believe that the [insured] would not have accepted the agreement if he had known that the agreement contained the particular term. Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the adhering party never had an opportunity to read the term, or if it is illegible or otherwise hidden from view. This rule is closely related to the policy against unconscionable terms and the rule of interpretation against the draftsman.

*Id.* at 396–97 (quoting Restatement (Second) of Contracts § 21 comment f (1981)).

Third, we must determine whether Wagner's alleged expectation of coverage was reasonable. "In most cases, this criterion will be met if one of the other two is: the insurer normally should not be presumed to know of an unreasonable expectation. Conversely, if the insurer created an expectation, it is probably reasonable for the insured to hold it." Abraham, *Judge–Made Law And Judge–Made Insurance: Honoring The Reasonable Expectations Of The Insured,* 67 Va.L.Rev. 1151, 1180 (1981). Since neither of the other two criteria have been met, it is not a reasonable expectation on this basis. Further, the policy terms clearly indicate that neither liability nor uninsured motor vehicle benefits are available to cover the personal injuries of an insured when a person who has the status of an insured negligently causes an accident, so Wagner's alleged expectation is not reasonable on this ground. Finally, the policy language is consistent with Utah statutes governing automobile insurance coverage. The relevant statutes controlling the issuance of automobile insurance policies in Utah include the Financial Responsibility of Motor Vehicle Owners and Operators Act, Utah Code Ann. §§ 41–12a–101 to –606 (1986),[6] and Utah Code Ann. §§ 31A–22–301 to –310.[7] The Financial Responsibility Act mandates minimum liability coverage conforming to the requirements set forth in Utah Code Ann. §§ 31A–22–303 and –304 (1986), and uninsured motorist coverage, unless waived, conforming to the requirements set forth in Utah Code Ann. §§ 31A–22–305 (1986). Under section 31A–22–304, an insurer may not limit his liability for motor vehicle liability coverage to less than "twenty thousand dollars because of bodily injury to or death of one person, in any one accident."

The Utah Supreme Court has held that the intent of the legislature in enacting these statutes is "to require the minimum coverages outlined in the [applicable statute] in all insurance policies used as security for the registration and subsequent operation of motor vehicles in Utah." *Allstate Ins. Co.,* 619 P.2d at 332. Consistent with this holding, it has found both a named driver exclusion clause, *id.* at 333, and a household or family exclusion clause, *Call,* 712 P.2d at 231, unenforceable up to the minimum statutory liability limits but enforceable in excess of these limits.[8] In the present case, respondent offered appellant coverage up to the minimum statutory amount, $20,000, according to terms of the policy. Its coverage, then, is not inconsistent with these statutes.

Identification of Lingle as an insured driver under the policy is similarly consistent with the provisions of section 31A–22–303(1)(b), which, in relevant part, requires a motor vehicle insurance policy to "insure any other person using any named motor vehicle with the express or implied permission of the named insured, ... subject to limits exclusive of interest and costs, for each motor vehicle, in amounts not less than the minimum limits specified under § 31A–22–304." Further, section 31A–22–305(3) requires uninsured motorist coverage to provide:

coverage for covered persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, disease, or death, in limits which at least equal the minimum bodily injury limits for motor vehicle liability policies under § 31A–22–304.

Respondent's policy explicitly provides this

**6.** The Safety Responsibility Act, Utah Code Ann. § 41–12–1 et seq. (1953) was repealed and replaced by the Financial Responsibility of Motor Vehicle Owners and Operators Act, Utah Code Ann. §§ 41–12a–101 to –606, which became effective on July 1, 1986. The accident in question occurred on November 15, 1986, so comes within the ambit of the new statute.

**7.** The former Insurance Code, Utah Code Ann. Title 31, was repealed in 1985 by the legislature

and was substantially amended to its present form, found in Utah Code Ann. Title 31A, also effective July 1, 1986.

**8.** Household exclusion clauses are illegal under the current version of the statute. Utah Code Ann. §§ 31A–22–303(1)(c) and 31A–22–308(1) (1986) mandate motor vehicle liability coverage and personal injury coverage, respectively, for all household members.

coverage in its "Other Insurance" section.[9]

Section 31A–22–305(2)(a), in relevant part, defines an "uninsured motor vehicle" as:

> a vehicle, the operation, maintenance, or use of which is not covered under a liability policy at the time of an injury-causing occurrence; or if the vehicle is covered, but with lower limits than required by § 31A–22–304, then the motor vehicle is uninsured to the extent of the deficiency.

The wording of respondent's insurance policy closely parallels this definition. Further, the Utah Supreme Court has indicated that insurance coverage "was intended to rest with the vehicle and not with the named insured." *Clark v. State Farm Mut. Auto. Ins. Co.,* 743 P.2d 1227, 1230 (Utah 1987). The relevant provisions of respondent's policy coincide with applicable Utah law. Thus, we do not find any statutory basis for Wagner to have had a reasonable expectation of coverage. Because respondent did not know nor should have known of Wagner's expectations and did not do anything to create such expectations of coverage, and because there is no statutory basis for such expectations, Wagner could not have had any reasonable expectation of coverage.

At this point, the only basis upon which we could find in appellant's favor is that this situation is appropriate for judicial revision of the insurance policy.[10] We decline to take such an activist approach, but leave any plugging of this "loophole" to the discretion of either the free market or the legislature. We note that this position is consistent with our supreme court's previous decisions in *Allstate Insurance Co.,* 619 P.2d at 329, and *Mastbaum,* 748 P.2d at 1042. We further note that, under Utah law, an insurance policy "must be enforced as written when its provisions do not conflict with our mandatory automobile insurance statutes." *Mastbaum,* 748 P.2d at 1044. Therefore, we hold that respondent had no obligation to insure Wagner under the circumstances presented by this case beyond the statutory minimum amount, and that the trial court correctly bound appellant to the terms of respondent's policy.

Other jurisdictions which have dealt with this issue have arrived at the same conclusion. Under identical facts, the New Mexico court concluded that uninsured motorist coverage was not provided under an automobile insurance policy because "the obligation of a liability insurer is contractual and is to be determined by the terms of the policy." *Willey v. Farmers Ins. Group,* 86 N.M. 325, 523 P.2d 1351, 1352 (1974) (quoting *Jones v. Harper,* 75 N.M. 557, 408 P.2d 56, 58 (1965).[11] Likewise, under identical facts, the Arizona Supreme Court allowed such an exclusion in *Gibbs,* 678 P.2d at 459.[12] The court agreed with the insurer

---

**9.** The relevant "Other Insurance" provision of the policy states, "We will provide insurance for an insured person, other than you or a family member, up to the limits of the Financial Responsibility Law only."

**10.** Some courts have mandated coverage in cases where policy language explicitly excluded it and where there was no reasonable expectation of such coverage simply because it was desirable to provide coverage that was currently unavailable. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Herron,* 123 Ariz. 315, 599 P.2d 768 (1979). These "mandated coverage decisions involve forms of coverage that simply are not marketed. The courts make such coverage available by tacking it onto conventional liability policies. In doing so, they step into a vacuum that neither the market nor administrative regulation has filled." Abraham, *Judge–Made Law and Judge–Made Insurance: Honoring The Reasonable Expectations Of The Insured,* 67 Va. L.Rev. 1151, 1163 (1981).

**11.** The insurer in *Willey* agreed:

> To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of (a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured; caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

*Willey,* 523 P.2d at 1352. Under the policy terms, an "uninsured motor vehicle shall not include ... a motor vehicle owned by or furnished for the regular use of the named insured." *Id.*

**12.** The policy at issue in *Gibbs* described the vehicle owned by the decedent as the covered automobile. Decedent was the named insured under the policy. The exclusion at issue reads

that there was no coverage for the negligent permissive driver in the wrongful death suit brought against him by the decedent's mother because there would have been no coverage for the decedent had he survived. *Id.* 678 P.2d at 461. The court reasoned that it is "undisputed that the owner of an automobile may contract with his insurance carrier to exclude insurance coverage for bodily injury to himself." *Id.*

We affirm the trial court's decision.

GREENWOOD, J., concurs.

ORME, Judge (concurring specially):

I join in the court's decision to affirm the judgment in favor of the insurer.

Appellant concedes that the language of the policy unambiguously denies uninsured motorist liability coverage, under the peculiar facts of this case, in any amount greater than $20,000. Appellant nonetheless asks this court to embrace the "reasonable expectations" doctrine, hold as a matter of law that Wagner's reasonable expectation was that he would be covered up to $100,-000 in the instant situation, and decree that this expectation must control over the unambiguous policy language to the contrary.

While I do not subscribe to the court's opinion in its entirety, I concur fully in its ultimate holding, namely that it is unnecessary in this appeal to definitively accept or to definitively reject the "reasonable expectations" doctrine. This is so because even if the doctrine were to be adopted in this state, appellant would not be entitled, given the state of the record before us, to the judgment she seeks. As explained in the main opinion, there is no evidence Wagner expected, reasonably or otherwise, $100,-000.00 in uninsured motorist liability protection if he were injured or killed as a passenger in his own car while it was being operated by an uninsured friend. Moreover, the insurance agent's best guess of how he would have explained to Wagner the extent of the uninsured motorist cover-

age he was obtaining would not have promoted such an expectation.

With no hard evidence but the policy before us, we are basically asked to superimpose on these facts our own common-sense notion of what someone in Wagner's position would reasonably have expected when contracting for the uninsured motorist coverage he obtained. This we have declined to do. But I must say that if we thought it appropriate to do otherwise, at least my common-sense view would not help appellant. My sense is that the average consumer in Wagner's situation would be contemplating a collision between his heavily-insured Porsche and some junk-heap operated by an irresponsible, insolvent, and uninsured stranger. Thoughts of needing additional protection while riding as a passenger in one's own Porsche, having turned the keys over to a friend without insurance, strike me as being quite unlikely indeed.

*Gibbs*, 678 P.2d at 461. Under the policy, the term "YOU" as "You or Your—means the named insured or named insureds shown on the declaration page." *Id.*