Richard H. NIELSEN, Plaintiff
and Appellant,

v.

Mark O'REILLY, Linda R. French, and
Metropolitan Property & Liability In-
surance Co., Defendants and Appellees.

No. 900489.

Supreme Court of Utah.

Nov. 13, 1992.

Rehearing Denied March 8, 1993.

L. Rich Humphreys, Karra J. Porter, Salt
Lake City, for Richard Nielsen.

Glenn C. Hanni, Barbara L. Maw, Salt
Lake City, for Metropolitan Property.

HALL, Chief Justice:

Plaintiff Richard H. Nielsen appeals the
judgment of the Third Judicial District
Court that $250,000 is the maximum recov-

ery possible under the uninsured motorist provision of an insurance policy issued by defendant Metropolitan Property & Liability Insurance Co. ("Metropolitan"). We affirm.

The facts of this case are undisputed. Prior to April of 1983, Nielsen purchased an insurance policy from Metropolitan. The policy insured two automobiles owned by Nielsen and was in force at all relevant times. Among other coverages, the policy included uninsured motorist protection with a limit of $250,000 for "each person" and $500,000 for "each accident." Metropolitan charged a separate premium for each vehicle.

On April 28, 1983, Nielsen and his son were involved in an automobile accident with two uninsured motorists, Mark O'Reilly and Linda French. As a result of the accident, both Nielsen and his son sustained personal injuries and filed claims with Metropolitan. Metropolitan settled the claim of Nielsen's son and made a partial payment of $1,707 to Nielsen. However, no settlement was reached on the remaining portion of Nielsen's claim. Ultimately, Nielsen filed suit against Metropolitan, O'Reilly, and French, seeking an apportionment of fault and a determination of Nielsen's damages and Metropolitan's liability.

The suit proceeded to a jury trial. O'Reilly and French defaulted. However, Metropolitan undertook their defense, disputing Nielsen's damage claims and asserting that Nielsen's own negligence was the primary cause of the accident. At trial, the parties stipulated that the question of Metropolitan's liability would not be presented to the jury. Rather, the court would determine Metropolitan's liability based on the jury's special verdict.

The jury determined that Nielsen was 3 percent at fault and O'Reilly and French

were 97 percent at fault and awarded Nielsen $213,593 in special damages and $500,000 in general damages. After a reduction for comparative fault and an addition of interest and court costs, the court entered judgment against O'Reilly and French in the amount of $707,590.

Following trial, Nielsen moved for summary judgment, seeking to recover the entire $707,590 judgment from Metropolitan in addition to prejudgment interest. Metropolitan argued that the limit on its coverage is $250,000 and that an insurer is not liable for prejudgment interest in excess of its policy limits. The trial court ruled in favor of Metropolitan.

This case presents three issues on appeal: (1) whether the $250,000–per–person limit, as opposed to the $500,000–per–accident limit, governs Nielsen's claim; (2) whether Nielsen is entitled to stack the policy limits because he paid separate premiums on two automobiles; and (3) whether Nielsen can recover prejudgment interest in excess of the policy limits. Because the trial court disposed of each of these issues on summary judgment, which by definition decides only questions of law, we grant the trial court decision no deference and review for correctness.[1]

■■■ In claiming that he is entitled to the $500,000 limit and that he may stack the policy limits, Nielsen asserts that the trial court erred in interpreting the policy's language. Generally, the interpretation of insurance policy language presents a question of law to be decided by the trial judge using accepted methods of construction.[2] Specifically, the terms of insurance contracts, as well as all contracts, are to be interpreted in accordance with their usually accepted meanings and should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions.[3] To protect against overreaching insurers and

1. Summary judgment should be granted if "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c); *see also Bonham v. Morgan*, 788 P.2d 497, 499 (Utah 1989); *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990).

2. *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988); *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).

3. *LDS Hosp.*, 765 P.2d at 858; *Buehner Block Co.*, 752 P.2d at 895.

because courts construe contracts against their drafters, ambiguities in the policy are resolved in favor of coverage.[4] Policy language is ambiguous if it is not " 'plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy.' "[5]

Nielsen first contends that the language of the policy can be read as providing coverage of $500,000 in cases where two or more people suffer injuries in one accident and that any language purporting to limit liability to $250,000 per person is ambiguous. Therefore, this language does not deny coverage. The provision in question states:

> Protection Against Uninsured Motorists Coverage.
>
> The limit for Protection Against Uninsured Motorists Coverage stated in the Declarations as applicable to "each person" [$250,000] is the limit of METROPOLITAN's liability for all damages arising out of bodily injury sustained by one person in any one accident, and subject to this provision, the limit of liability stated in the Declarations as applicable to "each accident" [$500,000] is the total limit of METROPOLITAN's liability for all such damages for bodily injury sustained by two or more persons in any one accident.

(Bold in original.) Nielsen maintains that this language is ambiguous because the policy does not define the terms "subject to this provision" and "person." This fact, however, does not render the policy unclear to a person of ordinary intelligence and understanding. The policy clearly limits the amount one person can recover in one accident to $250,000, and therefore, the provision should be given effect.[6]

Similarly, Nielsen asserts that he is entitled to stack the applicable policy limit. He points out that uninsured motorist coverage, unlike liability coverage, is not linked to a particular vehicle but is a floating coverage that covers the insured for injuries and damages caused by uninsured motorists in all circumstances. Therefore, he argues, it is reasonable to expect additional coverage upon the payment of an additional premium. Nielsen claims that this fact creates an ambiguity as to whether he should be able to stack two policy limits of $250,000 to arrive at a total limit of $500,000, because he paid separate premiums on two automobiles.

The policy, however, contains the following provision:

> 5. OTHER AUTOMOBILE INSURANCE AND METROPOLITAN.
>
> With respect to any occurrence, accident or loss to which this and any other automobile insurance policy issued to the named insured by METROPOLITAN also applies, the total limit of METROPOLITAN'S liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.

(Bold in original.)

Nielsen claims that this provision is ambiguous because it appears in the general conditions section as opposed to the uninsured motorist section and because it refers to other insurance instead of other coverages. These facts, however, are of no significance. The provision clearly prohibits the stacking of policy limits. Indeed, we have held almost identical language to

---

**4.** See *Allen v. Prudential Property and Casualty Ins. Co.*, 839 P.2d 798, 806–807, (1992); *LDS Hosp.*, 765 P.2d at 858; *Hoffman v. Life Ins. Co. of North Am.*, 669 P.2d 410, 417 (Utah 1983); *Phillips v. Utah Local Gov'ts Trust*, 660 P.2d 249, 250 (Utah 1983).

**5.** *LDS Hosp.*, 765 P.2d at 858–59 (quoting *Auto Lease Co. v. Central Mut. Ins.*, 7 Utah 2d 336, 325 P.2d 264, 266 (1958) (footnote omitted)).

**6.** Other jurisdictions have found similar provisions to be unambiguous. See *Standard Accident Ins. Co. of Detroit, Michigan v. Winget*, 197 F.2d 97, 103 (9th Cir.1952); *Allstate Ins. v. Os-*

be unambiguous.[7] Furthermore, the placement of a provision does not affect its validity. As noted above, insurance policies must be interpreted as a whole, giving effect to all provisions. Reading the policy as a whole, the above-quoted language resolves any ambiguity as to whether an insured can stack policy limits.

Nielsen also argues that even if we determine the above-quoted provision to be unambiguous, the provision should not be given effect. Rather, as a matter of public policy, we should enforce Nielsen's reasonable expectation that he can stack the policy limits.

In making this argument, Nielsen asks this court to adopt a version of the reasonable expectations doctrine, a doctrine developed to protect against overreaching insurers that, under certain circumstances, allows courts faced with an adhesion contract to look to the insured's reasonable expectations in determining policy coverage.[8] Other jurisdictions have adopted various formulations of this doctrine, such as allowing the enforcement of expectations in direct conflict with clear policy language.[9]

This court, however, has never adopted any version of the doctrine. Indeed, in a case just recently decided, *Allen v. Prudential*,[10] we declined to adopt two formulations of the doctrine presented in that case. Specifically, we rejected an assertion that in dealing with an adhesion contract, the reasonable expectations of the insured should be enforced as a matter of course.[11] We noted that such a claim was without support and "overreaches the rationale for the [reasonable expectations] doctrine, even at its broadest [point]." [12]

We also rejected a more mainstream approach suggested by the Utah Court of Appeals in *Wagner v. Farmers Insurance Exchange*.[13] Under the *Wagner* formulation, the insured's reasonable expectations may be enforced if "the insurer knew or should have known of the insured's expectations; ... the insured created or helped to create these expectations, and ... the insured's expectations are reasonable." [14] If the fact finder is convinced that these three requirements are met, the reasonable expectations of the insured will be enforced in the face of contrary and unambiguous policy language.[15]

In rejecting *Wagner*'s approach, we noted that regardless of the formulation of the reasonable expectations doctrine, substantial uncertainty surrounds "the theoretical underpinnings of the doctrine, its scope, and the details of its application." [16] We also noted our belief that case-by-case development of Utah's traditional equitable remedies suffices to protect against overreaching insurers.[17]

---

*tenson,* 105 Wash.2d 244, 713 P.2d 733, 735 (1986).

7. In *Martin v. Christensen,* 22 Utah 2d 415, 454 P.2d 294, 295 (1969), we found the following provision to be unambiguous:

> With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy.

8. *See Allen,* 839 P.2d at 801; *see also* Roger C. Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades,* 51 Ohio St. L.J. 823 (1990) [hereinafter Henderson].

9. *See Allen,* 839 P.2d at 801; *see also* Henderson; Mark C. Rahdert, *Reasonable Expectations Reconsidered,* 18 Conn.L.Rev. 323, 335–36, 345 (1986).

10. 839 P.2d 798 (Utah 1992).

11. *Id.* at 803, at 10.

12. *Id.*

13. 786 P.2d 763 (Utah Ct.App.1990).

14. *Id.* at 766; *see also* Kenneth S. Abraham, *Judge–Made Law and Judge–Made Insurance: Honoring the Reasonable Expectations of the Insured,* 67 Va.L.Rev. 1151, 1179–80 (1981).

15. *See Wagner,* 786 P.2d at 766–67.

16. *Allen,* 839 P.2d at 803.

17. *Id.* at 806, at 12.

However, the holding in *Allen* is predicated primarily on the predominant role the legislative and executive branches have undertaken in regulating the insurance industry and establishing the public policy underlying Utah's insurance law.[18] We rejected the *Wagner* formulation because, in the absence of legislative direction, invalidating a clear provision on the basis that the insurer knew about and helped to create a reasonable expectation in conflict with the provision would undercut expressed legislative policy underlying the regulation of the insurance industry.[19] Specifically, such an approach conflicts with the legislatively expressed policy that " 'freedom of contract' be maintained and that written contracts be the primary means by which this freedom of contract [is] exercised." [20] In so holding, we did not abandon our responsibility to develop common law principles relating to the insurance industry within parameters not preempted by the legislature. Rather, we merely reaffirmed our traditional position of deferring to legislatively announced policy.[21]

The instant case differs from *Allen* in two important respects: (1) the formulation of the doctrine before the court; and (2) the fact that *Allen* dealt with title 31A, the insurance code in effect after July 1, 1986, while the present case deals with title 31, the insurance code in effect prior to July 1, 1986.[22] We turn first to the question of the formulation of the reasonable expectations doctrine. Nielsen does not advance a recognized version of the reasonable expectations doctrine. Instead, he bases his argument on two factors peculiar to the instant case.

First, he argues that his expectation of the ability to stack policy limits is reasonable, given the floating nature of uninsured motorist protection, i.e., protection that is not linked to a particular automobile, and the fact that he paid separate premiums on two automobiles. Second, he points to the fact that in calculating the premium for the second vehicle, Metropolitan does not take into account that part of the premium charged on the first insured vehicle is a charge for uninsured motorist protection. The result is that the more vehicles insured, the more Metropolitan charges for uninsured motorist protection.[23]

In essence, under Nielsen's formulation, if the insured can link a reasonable expectation of greater coverage to the payment of an additional amount in premiums, the insured's reasonable expectations will be enforced in the face of clear policy language to the contrary. Given our holding in *Allen*, the first question in determining if we should adopt this version of the doctrine is whether it undercuts legislatively announced public policy.

We again note that the insurance code applicable in the instant case differs from the insurance code applicable in *Allen*. Any analysis of the distinctions between title 31 and title 31A must begin with the recognition that, as we observed in *Allen*, "[m]any of the provisions in title 31A mirror the provisions in title 31, and both titles are equally comprehensive in their scope and regulatory effect." [24]

Indeed, both titles establish an "Insurance Department" and delegate to the commissioner the power to promulgate rules

**18.** *See id.* at 804 (citing Utah Code Ann. §§ 31A–2–101 to –29–123 (1991) ).

**19.** *See id.* at 806.

**20.** *Id.* (citing Utah Code Ann. §§ 31A–1–102(7), 31A–21–301 to –404 (1991 & Supp.1991) ).

**21.** *See id.* at 804–805; *see also, e.g., State Farm Mut. Auto. Ins. v. Mastbaum,* 748 P.2d 1042 (Utah 1987); *General Motors Acceptance Corp. v. Martinez,* 668 P.2d 498 (Utah 1983).

**22.** *See* 1985 Utah Laws ch. 242.

**23.** It appears from the record that when he purchased the insurance, Nielsen did not have a subjective expectation that he was entitled to stack his policy limits. Instructions to the jury stated that the maximum amount recoverable from Metropolitan was $250,000. It appears from the attorney's argument that Nielsen did not make his claim of entitlement to stack his policy limits until after the jury verdict was returned.

**24.** *Allen,* 839 P.2d at 804 n. 8.

implementing the provisions of the insurance code and the power to investigate violations of the insurance code.[25] Under both titles, preprinted policies must be filed with the commissioner, who has the authority to invalidate any form determined to be deceptive or unfair.[26] Thus, as in *Allen,* "the validity of preprinted insurance contracts is premised on executive approval."[27] Finally, inherent in both titles is the legislatively announced policy that freedom to contract be maintained and written contracts be the primary means by which this freedom is exercised.[28] Clearly, the same policy relied on in *Allen* applies in the instant case, and therefore, the *Allen* reasoning applies here with equal force.

We have decided several cases under title 31 wherein an insured sought to stack uninsured motorist limits, and in each case, we refused to allowed stacking.[29] One case, *Martin v. Christensen,*[30] is similar to the case at bar. In *Martin,* the plaintiff argued that because two separate premiums were paid to one insurance company, the plaintiff should be allowed to stack policy limits despite clear policy language to the contrary.[31] This contention was based in part on the argument that the legislature, in enacting uninsured motorist legislation, intended to allow stacking in such circumstances.[32] However, we concluded that the legislature had no such intention and enforced the contract as written.[33] Utah therefore has no public policy in favor of stacking policy limits when an insured pays multiple premiums to the same insurer.

Given *Allen* and *Martin,* we decline to adopt Nielsen's position. Ignoring the clear language of the policy because Nielsen claims that he expected additional coverage due to the payment of an additional premium would significantly modify legislatively expressed public policy underlying the regulation of the insurance industry. Charging more for uninsured motorist protection to those who insure more than one vehicle may not be the most rational method of calculating premiums. However, it does not justify a judicial rewriting of the insurance contract in violation of legislative policy and prior case law. Hence, the trial court did not err in ruling that the policy limit on Nielsen's claim is $250,000.

■ Finally, Nielsen contends that the trial court erred in declining to award prejudgment interest in excess of the policy limits. First, Nielsen claims that he has a contractual relationship with Metropolitan and, therefore, pursuant to Utah Code Ann. § 15–1–1(1) (redesignated as § 15–1–1(2)) and *Beck v. Farmers Insurance Exchange,*[34] he is entitled to prejudgment interest on the $250,000 regardless of the policy limits. *Beck* established that a first-party insured's claim against an insurer for breach of the implied covenant of good faith and fair dealing gives rise to a cause of action in contract whereby consequential damages may be awarded in excess of policy limits.[35] Section 15–1–1(1) establishes

---

25. *Compare* Utah Code Ann. §§ 31–2–1 to –16 (1953 & Supp.1983) (repealed 1986) *with* Utah Code Ann. §§ 31A–2–101 to –311 (1991).

26. *Compare* Utah Code Ann. §§ 31–19–9(1) to –10 (1953) (repealed 1986) *with* Utah Code Ann. § 31A–21–201(2)(a)(i) (1991).

27. *Allen,* 839 P.2d at 804.

28. *Compare* Utah Code Ann. §§ 31–19–1 to –29 (1953 & Supp.1983) (repealed 1986) (setting forth detailed provisions for the right to contract, authorizing insurance clauses, and establishing that any modifications must be in writing) *with* Utah Code Ann. § 31A–1–102(7) *and* §§ 31A–21–303 to –404 (1991 & Supp.1991) (establishing policy of maintaining freedom to contract, setting forth detailed provisions authorizing and governing insurance contract clauses,

and setting forth acceptable methods of modification).

29. *See Lyon v. Hartford Accident & Indemn. Co.,* 25 Utah 2d 311, 480 P.2d 739, 745 (1971); *Martin v. Christensen,* 22 Utah 2d 415, 454 P.2d 294, 296 (1969); *Russell v. Paulson,* 18 Utah 2d 157, 417 P.2d 658, 662 (1966).

30. 22 Utah 2d 415, 454 P.2d 294 (1969).

31. *Id.,* 454 P.2d at 295.

32. *Id.,* 454 P.2d at 295–96.

33. *Id.,* 454 P.2d at 296.

34. 701 P.2d 795 (Utah 1985).

35. *Id.* at 800–02.

the legal rate of prejudgment interest in a breach of contract as 10 percent per annum.

The difficulty with this argument is that Nielsen did not pursue a breach of contract claim against Metropolitan. The proceedings were limited to establishing coverage under the policy, and no determination was made as to whether the policy was breached. Nielsen never asserted that Metropolitan breached the implied covenant of good faith and fair dealing. Nor did he assert that Metropolitan breached an express covenant by failing to "pay all sums which the insured ... shall be legally entitled to recover as damages" pursuant to the policy's terms. (Bold in original.) Indeed, Metropolitan promptly paid the $250,000 after the judgment. Because Nielsen failed to pursue a claim for breach of contract, we do not address the issue of whether an insurer who breaches a contract with its first-party insured is liable for prejudgment interest in excess of the policy limits.

■ In an alternative argument, Nielsen claims that the insurance policy and Utah Code Ann. § 78–27–44 provide for the award of prejudgment interest on his special damages in excess of the policy limits.[36] Metropolitan admits that the policy provides for the award of prejudgment interest on Nielsen's special damages. A majority of courts have interpreted the language "all sums which the insured ... shall be legally entitled to recover as damages" to include prejudgment interest properly awarded in the underlying personal injury action.[37] These courts reason that prejudgment interest is part of the damages the insured is legally entitled to recover.[38] However, the policy limits clearly apply to the term "damages." Therefore, Nielsen may not be awarded prejudgment interest in excess of these limits.[39]

As for Nielsen's claim that as a matter of public policy he should be awarded prejudgment interest in excess of the policy limits regardless of the policy language, we reiterate the public policy requirement that absent legislative direction to the contrary, contract provisions are to be enforced as written. Hence, we affirm the trial court's ruling that Nielsen is not entitled to recover prejudgment interest in excess of the policy limits.

Affirmed.

ZIMMERMAN, J., and RUSSELL W. BENCH, Court of Appeals Judge, concur.

STEWART, Justice, Dissenting.

The majority opinion holds that an insurance company may sell two uninsured motorist coverages to an insured, charge two premiums for those coverages, and then never have to pay out under one of them. The majority condones what I submit is unconscionable conduct that is tantamount to fraud on the plaintiff and the public.

The plaintiff purchased an automobile insurance policy that provided separate coverages on each of his two automobiles. The policy provided two uninsured motorist coverages for which the insured paid two separate premiums. Each coverage had a policy limit of $250,000. The plaintiff was injured by an uninsured motorist and suffered damages in the amount of $707,595. The plaintiff contends that he is entitled to recover $250,000 under each coverage for a total of $500,000, because he bought and paid for two coverages. This Court holds that the plaintiff is entitled to recover under only one uninsured motorist coverage because the "other insurance clause" in

---

**36.** Section 78–27–44 establishes that prejudgment interest may be awarded on special damages in personal injury cases.

**37.** *See, e.g., Guin v. Ha,* 591 P.2d 1281 (Alaska 1979); *Factory Mut. Liability Ins. Co. of Am. v. Cooper,* 106 R.I. 632, 262 A.2d 370 (1970); *see also* 15S *Couch on Insurance 2d,* § 56:10 (1983) [hereinafter *Couch* ].

**38.** *See, e.g., Guin v. Ha; Factory Mut. Liability Ins. Co. of Am. v. Cooper; see also Couch* at § 56:10.

**39.** *See Guin v. Ha; Factory Mut. Liability Ins. Co. of Am. v. Cooper; see also Couch* at § 56:10.

the policy relieves the insurance company from liability under the second coverage.[1]

Uninsured motorist coverage, unlike liability and collision coverages, is not tied to the insured's automobile, but covers injuries to the insured whether the injury occurs in his automobile or elsewhere. Thus, "[c]overage is available to the insured while occupying any motor vehicle, whether owned or nonowned, insured or uninsured, or while the insured is on foot or on horseback." 3 Irvin E. Schermer, *Automobile Liability Insurance* § 31.02[8], at 31–18.2 (2d ed. 1992); *see also Tucker v. Government Employees Ins. Co.*, 288 So.2d 238, 241 (Fla.1973); *Allstate Ins. Co. v. Morgan*, 59 Haw. 44, 575 P.2d 477, 479 (1978); *Chaffee v. United States Fidelity & Guar. Co.*, 181 Mont. 1, 591 P.2d 1102, 1104 (1979); *Federated Am. Ins. Co. v. Raynes*, 88 Wash.2d 439, 563 P.2d 815, 820 (1977).

Under the most elementary concepts of honesty and fair dealing, an insured who pays for two coverages and the insurance company collects two premiums, ought to have the benefit of both coverages.[2] The Supreme Court of Kansas has stated: "When we pay double premium[s] we expect double coverage. This is ... in accord with general principles of indemnity that amounts of premiums are based on amounts of liability." *Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 457 P.2d 34, 42 (1969).

In my view, it is unconscionable to allow an insurance company to collect a second premium and give nothing in return on the ground that the insured consented to the fraud by virtue of a provision in the insurance contract. This is particularly so when the coverage is mandated by statute and the insured has not expressly waived it.

The inequity of allowing insurance companies to charge a premium on a coverage for which they will never have to pay out has led a large majority of courts to allow insureds to "stack" two or more coverages. *See Great Central Ins. Co. v. Edge*, 292 Ala. 613, 298 So.2d 607 (1974); *Farm Bureau Mut. Ins. Co. of Ark. v. Barnhill*, 284 Ark. 219, 681 S.W.2d 341 (1984); *Yacobacci v. Allstate Ins. Co.*, 33 Conn.Supp. 229, 372 A.2d 987 (1976); *Sellers v. United States Fidelity & Guar. Co.*, 185 So.2d 689 (Fla. 1966); *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 177 S.E.2d 257 (1970); *American Ins. Co. v. Takahashi*, 59 Haw. 59, 575 P.2d 881 (1978); *Kaufmann v. Economy Fire & Casualty Co.*, 76 Ill.2d 11, 27 Ill.Dec. 742, 389 N.E.2d 1150 (1979); *Patton v. Safeco Ins. Co. of Am.*, 148 Ind.App. 548, 267 N.E.2d 859 (1971); *Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969); *Meridian Mut. Ins. Co. v. Siddons*, 451 S.W.2d 831 (Ky.1970); *Bourgeois v. Government Employees Ins. Co.*, 316 So.2d 804 (La.Ct.App. 1975); *Langston v. Allstate Ins. Co.*, 40 Md.App. 414, 392 A.2d 561 (1978); *Cardin v. Royal Ins. Co. of Am.*, 394 Mass. 450, 476 N.E.2d 200 (1985); *Government Employees Ins. Co. v. Brown*, 446 So.2d 1002 (Miss.1984); *Cameron Mut. Ins. v. Madden*, 533 S.W.2d 538 (Mo.1976); *Chaffee*, 181 Mont. 1, 591 P.2d 1102; *Allstate Ins. Co. v. Maglish*, 94 Nev. 699, 586 P.2d 313 (1978); *Sutton v. Aetna Casualty & Sur. Co.*, 325 N.C. 259, 382 S.E.2d 759 (1989); *Richardson v. Allstate Ins. Co.*, 619 P.2d 594 (Okla.1980); *Sones v. Aetna Casualty & Sur. Co.*, 270 Pa.Super. 330, 411 A.2d 552 (1979); *Bryant v. State Farm Mut. Auto. Ins. Co.*, 205 Va. 897, 140 S.E.2d 817 (1965); *American States Ins. Co. v. Milton*, 89 Wash.2d 501, 573 P.2d 367 (1978); *see also Vernon v. Harleysville Mut. Casualty Co.*, 244 S.C. 152, 135 S.E.2d 841 (1964); *Fidelity & Casualty Co. of New*

---

**1.** The other insurance claim provides:

    5. OTHER AUTOMOBILE INSURANCE AND METROPOLITAN.

    With respect to any occurrence, accident or loss to which this and any other automobile insurance policy issued to the named insured by METROPOLITAN also applies, the total limit of METROPOLITAN'S liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.

    (Bold in original.)

**2.** Clearly, a plaintiff should not be able to collect on more than one coverage when his damages do not exceed the first. The issue here, however, is not one of double recovery because the plaintiff's injuries exceeded both coverages.

*York v. Gatlin,* 470 S.W.2d 924 (Tex.Civ. App.1971).

Indeed, courts have specifically allowed insureds to stack coverages despite clear policy language that purported to prohibit stacking, whether by way of "other insurance," "exclusionary," "excess coverage," "anti-stacking," or other limiting clauses. *See, e.g., Edge,* 298 So.2d at 608; *Maglish,* 586 P.2d at 314–15; *Brown,* 446 So.2d at 1006; *Chaffee,* 591 P.2d at 1104; *Santos v. Lumbermens Mut. Casualty Co.,* 408 Mass. 70, 556 N.E.2d 983 (1990); *Blakeslee v. Farm Bureau Mut. Ins. Co.,* 388 Mich. 464, 201 N.W.2d 786 (1972); *Raynes,* 563 P.2d 815.

Although the Utah statute requiring uninsured motorist coverage sets minimum limits for coverage, it does not fix a maximum limit. Utah Code Ann. § 41–12–21.1 (1981 & Supp.1983). The Michigan Supreme Court has held that a similar statute requiring uninsured motorist coverage cannot be limited by clauses in the policy aimed at limiting liability. *Blakeslee,* 201 N.W.2d at 791. That court stated:

> It would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised "other insurance" limitation. Nothing could more clearly defeat the intention of the legislature.

*Id.; see also Boettner v. State Farm Mut. Ins. Co.,* 388 Mich. 482, 201 N.W.2d 795, 798 (1972). In *Tucker v. Government Employees Insurance Co.,* 288 So.2d 238 (Fla. 1973), the Florida Supreme Court addressed the issue of stacking two coverages issued under one policy in the context of statutorily mandated uninsured motorist coverage. That court stated in language that is applicable here:

> The total uninsured motorist coverage which the insured has purchased for himself and his family regardless of the number of vehicles covered by his auto liability policy inures to him or any member of his family when injured by an uninsured motorist. Moreover, according to *Sellers v. United States Fidelity & Guaranty Co.,* [185 So.2d 689 (Fla. 1966),] such total coverage is applicable to any uninsured motorist negligently injuring the insured or any member of his family covered thereby. The statute admits of no authority in the insurer by a provision in the policy to limit coverage on the presumed basis that the uninsured motorist would only have covered himself with the minimum auto liability coverage required under F.S. Section 324.-021(7), F.S.A. The determinant of the amount of coverage is the total which the insured purchases pursuant to the authority of the statute and not that which the insurer otherwise attempts to limit by a provision in the policy.
>
> An insured under uninsured motorist coverage is entitled by the statute to the full bodily injury protection that he purchases and for which he pays premiums. It is useless and meaningless and uneconomic to pay for additional bodily injury insurance and simultaneously have this coverage cancelled by an insurer's exclusion. The premium rates are standard and uniform on a per car basis. The insured's full protection cannot be whittled away by exclusions or limitations....

*Id.* at 242. In *Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo. 1976), the Missouri Supreme Court, quoting *Great Central Insurance Co. v. Edge,* 292 Ala. 613, 298 So.2d 607, 610 (1974), stated, "Cases should not and will not turn on how well the insurer drafts a limiting clause because the law does not permit insurers to collect a premium for certain coverage, then take that coverage away by such a clause no matter how clear or unambiguous it may be." In *American Insurance Co. v. Takahashi,* 59 Haw. 59, 575 P.2d 881 (1978), the Hawaii Supreme Court construed a limiting clause that contained language similar to the one at issue in this case. That court stated:

> [S]eparate uninsured motorist insurance coverage must be provided in at least the minimum statutorily required amounts for each automobile insured under a single liability insurance policy. In *Morgan,* three automobiles were insured un-

der a single liability policy. We concluded that under the provisions of HRS §§ 431–448 and 287–7, $10,000 of per person uninsured motorist coverage was separately provided for each of the insured automobiles.

. . . .

We hold that the limits of liability clause in the policy before us is invalid insofar as it attempts to defeat the statutory requirements of HRS § 431–448. American cannot reduce its liability for uninsured motorist coverage below the statutorily required minimum amounts for each insured vehicle. *See Walton v. State Farm Mutual Automobile Insurance Co.*, 55 Haw. 326, 518 P.2d 1399 (1974). Therefore the limitation of uninsured motorist coverage to a maximum of $20,000 "regardless" of the number of automobiles to which the policy applies is null and void.

*Id.* 575 P.2d at 883–884; *see also Cardin v. Royal Ins. Co. of Am.*, 394 Mass. 450, 476 N.E.2d 200 (1985); *Bourgeois v. Government Employees Ins. Co.*, 316 So.2d 804 (La.Ct.App.1975).

It is indefensible to suggest, as this Court did in *Martin v. Christensen*, 22 Utah 2d 415, 454 P.2d 294 (1969), that the legislature intended to allow an insurance company to collect a premium for statutorily mandated coverage and then nullify that coverage with a clause in an adhesion contract. I would overrule *Martin v. Christensen* to the extent that it prohibits stacking when more than one premium has been paid.

Clauses in insurance policies that prevent stacking are inconsistent with the general statutory policy mandating uninsured motorist coverage. They are also unconscionable and should be stricken to the extent that they allow an insurance company to refuse coverage after collecting premiums for what appears to be statutorily mandated coverages. *See generally Resource Management Co. v. Western Ranch*, 706 P.2d 1028, 1040–42 (Utah 1985); Donald M. Zupance, Annotation, *Doctrine of Uncon-*

*scionability As Applied to Insurance Contracts*, 86 A.L.R.3d 862 (1978).

I dissent.

DURHAM, J., concurs in the dissenting opinion of STEWART, J.

HOWE, Associate C.J., does not participate herein; BENCH, Court of Appeals Judge, sat.