Lori GEE, Petitioner,

v.

UTAH STATE RETIREMENT BOARD, Respondent.

No. 910754–CA.

Court of Appeals of Utah.

Nov. 23, 1992.

H. Wayne Wadsworth, Salt Lake City, for petitioner.

Mark A. Madsen and Kevin A. Howard, Salt Lake City, for respondent.

Before BENCH, GARFF and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Lori Gee appeals the Utah State Retirement Board's denial of coverage for her breast implant removal surgery. We affirm.

## FACTS

In August 1980, Lori Gee underwent bilateral mastectomy for fibrocystic mastitis. Following the operation, she received smooth wall silicone gel implants to restore normal appearing breast tissue. At that time, she was not covered by the Public Employees Health Program (PEHP).

In the fall of 1990, after Gee had become a member of PEHP, she was diagnosed as having auto-immune disorder resulting from implant failure, and her doctor recommended removal of the implants. On November 29, 1990, Gee sought pre-authorization for "capsulectomy and removal of implant material" and "breast prosthesis." PEHP denied the request on the basis of the following exclusions contained in the master policy/booklet:

1. Breast augmentation or implant; except initial restoration made necessary as a result of cancer surgery performed when covered by Public Employees Health Program.

2. Repair of breast implant originally placed for cosmetic purposes.

3. Simple/subcutaneous mastectomy for benign disease or mastectomy for other than cancer is not covered, including reconstruction.

....

16. Complications as a result of other ineligible surgery.

Gee had her implants removed and sought review of PEHP's denial of her request by an adjudicative hearing officer of the Utah State Retirement Board (the Board). The hearing officer determined that since the original mastectomy was performed while Gee was not a covered member of PEHP, and since it was not performed as a result of cancer, the proposed surgery was to correct a complication of a non-covered surgery, and therefore was not covered. The Board upheld the hearing officer's decision.

Gee appeals the Board's order, asserting that: (1) the hearing officer erred in concluding that Gee's surgery was not covered under the PEHP policy, and (2) allowing exclusion of coverage in Gee's case is against public policy.

## COVERAGE UNDER THE POLICY

On the first issue, Gee argues that since the policy does not specifically exclude her surgery, it is ambiguous and, thus, the Board erred in upholding the hearing officer's determination that her surgery was not covered under the PEHP policy. The Board responds that the policy was not ambiguous and that surgery was specifically excluded. We agree.

Insurance policies are contracts, and are interpreted under the same rules governing ordinary contracts. *Village Inn Apartments v. State Farm Fire & Casualty Co.*, 790 P.2d 581, 582 (Utah App.1990) (citing *Bergera v. Ideal Nat'l Life Ins. Co.*, 524 P.2d 599, 600 (Utah 1974)). "Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord [the Board's] interpretation no presumption of correctness." *Zions First Nat'l Bank v.*

*National Am. Title Ins. Co.,* 749 P.2d 651, 653 (Utah 1988). Moreover, "[w]hether a contract is ambiguous is a question of law." *Village Inn Apartments,* 790 P.2d at 582 (citations omitted). "Contract language may be ambiguous if is unclear, omits terms, or if the terms used to express the intention of the parties may be understood to have two or more plausible meanings." *Id.* at 583 (citations omitted). However, a policy term is not ambiguous simply because one party ascribes a different meaning to it to suit his or her own interests. *Id.* Furthermore, if we determine that the policy terms are clear and unambiguous, "we interpret those terms in accordance with their plain and ordinary meaning...." *Id.* (quoting *Valley Bank & Trust Co. v. U.S. Life Title Ins. Co.,* 776 P.2d 933, 936 (Utah App.1989) (citation omitted).

In the case at bar, Gee argues that the exclusion provisions of PEHP's policy are ambiguous on the ground that they do not specifically exclude the removal of failed breast implants. Alternatively, she asserts that failure of her breast implants should not be considered a complication as a result of another surgery. We disagree.

As to Gee's first point, exclusion provision three provides that "[s]imple/subcutaneous mastectomy for benign disease or mastectomy for other than cancer is not covered, including reconstruction." Since Gee's mastectomy in 1980 was not for cancer, such was clearly an ineligible surgery under the unambiguous language of exclusion provision three of the PEHP policy.

We next look at exclusion provision sixteen, which excludes coverage for "[c]omplications as a result of other ineligible surgery." Webster defines a "complication" as "a difficult factor or issue often appearing suddenly and unexpectedly and changing existing plans, methods, or attitudes...." *Webster's Third New Int'l Dictionary* 465 (1986). It defines "result" as follows: "to proceed, spring, or arise as a consequence, effect, or conclusion...." *Id.* at 1937. Since Gee's breast implant failure was a difficulty that arose as a consequence of her earlier mastectomy, an ineligible surgery under the PEHP policy, it is clearly excluded under the plain and unambiguous language of exclusion sixteen. Accordingly, we affirm the Board's conclusion that Gee was not covered under the PEHP policy.[1]

## PUBLIC POLICY

Gee further argues that the exclusion is unreasonable and therefore contrary to public policy. It is well settled that "[p]rovisions of insurance policies excepting particular losses from the coverage thereof are ordinarily valid, for the parties to a contract of insurance have the right to limit or qualify the extent of the insurer's liability in any manner not inconsistent with statutory forms or provisions or contrary to public policy." 10 Mark S. Rhodes, *Couch on Insurance 2d* § 41:378, at 444 (Rev. ed. 1982). However, in claiming that this exclusion violates public policy, Gee cites no case precedent in support of her proposition, nor does she articulate what public policy this exclusion violates. Instead, she merely states that it is unfair that the policy covers mastectomies as a result of cancer and does not cover mastectomies as a result of mastitis. Without more, we cannot say that this was beyond PEHP's right to limit its liability as it sees fit. Although public policy sometimes requires that we hold insurers liable even in the face of contract terms limiting their liability,[2] Gee has not demonstrated that

---

1. In fact, Gee's counsel even admitted as much at the hearing, stating, "[T]his is an exclusion as outlined in the plan and as defined by the plan administrator and counsel, they're not misinterpreting the plan." Additionally, the hearing officer later questioned Gee's counsel: "Okay. So where we are right now, are we not ... is that it is admitted that the plan, if you follow its precise language, would deny coverage, and what you're saying is that it is against public policy to

opens [sic] to the plan and that some of the exclusions in the plan don't make sense, and without any validity?," to which Gee's counsel responded, "Right."

2. *See, e.g., Farmers Ins. Exch. v. Call,* 712 P.2d 231, 236 (Utah 1985) (public policy requires that the insured person is entitled to be informed in writing of the essential terms of the contract, including exclusion terms); *LDS Hosp. v. Capitol Life Ins. Co.,* 765 P.2d 857, 858 (Utah 1988)

public policy compels us to do so here. Additionally, exclusions such as this one, denying coverage for complications arising from ineligible surgeries, are common, and Gee has not presented to us, and we have been unable to find, any instance when a similar exclusion provision has been held invalid as violative of public policy. Thus, we reject Gee's public policy argument.

## CONCLUSION

For the foregoing reasons, we affirm the Utah State Retirement Board's order denying Gee coverage for her breast implant removal surgery.

BENCH and GARFF, JJ., concur.

(as a matter of public policy, ambiguities or inconsistent provisions in insurance contracts are construed in favor of coverage and against the insurer). However, neither of these apply here.