1999 UT 47

**UTAH FARM BUREAU INSURANCE CO., Plaintiff and Appellee,**

v.

**Clinton E. CROOK and Rhonda L. Crook, Defendants and Appellants.**

No. 970326.

Supreme Court of Utah.

May 11, 1999.

Stephen G. Morgan, Cynthia K.C. Meyer, Salt Lake City, for plaintiff.

Gerry D'Elia, Park City, for defendants.

STEWART, Justice.

¶ 1 Rhonda Crook appeals from a district court order denying her motion for summary judgment and granting Utah Farm Bureau Insurance Co.'s motion for summary judgment. Farm Bureau insured Clinton and Rhonda Crook's mobile home under a homeowner policy (the "Policy"). On July 13, 1995, the couple drank at a local bar. Around 10:00 p.m., Clinton asked Rhonda to return home with him, but she refused. He became angry, told her that he was going to burn down their home, and left. Upon returning home, he called her at the bar and renewed his threat. She again refused to return. Clinton then poured nearly a gallon of diesel fuel on the carpet and lit it. The carpet ignited, and the fire grew to almost two feet wide and one foot high. Clinton thought he had extinguished it after five minutes, but by the next morning, the house had burned to the ground. Clinton pled guilty to third degree arson. There is no factual dispute that Clinton burned the house.

¶ 2 Ms. Crook claimed insurance from Farm Bureau under the Policy. Farm Bureau refused payment and filed a declaratory action to establish that it was not liable under the Policy. On cross motions for summary judgment, Farm Bureau argued that it could deny coverage under the Policy's intentional acts exclusion. That provision states Farm Bureau does not insure losses caused by the intentional acts of an insured. The trial court granted summary judgment for Farm Bureau, and Ms. Crook appealed.[1] We affirm.

¶ 3 This Court reviews a trial court's entry of summary judgment for correctness and gives its conclusions of law no deference. See Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. See id.; Utah R. Civ. P. 56(c).

¶ 4 Ms. Crook argues that the Policy's intentional acts exclusion is ambiguous and that the trial court's construction of that provision to exclude coverage violates public policy under Error v. Western Home Insurance Co., 762 P.2d 1077 (Utah 1988). We turn first to the issue of ambiguity.

I. AMBIGUITY

¶ 5 Insurance policies are generally interpreted according to rules of contract interpretation. See Alf, 850 P.2d at 1274. Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole. See Nielsen v. O'Reilly, 848 P.2d 664, 665 (Utah 1992). Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible. See id. Insurers "may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." Alf, 850 P.2d at 1275 (internal quotations omitted).

¶ 6 Whether an insurance policy is ambiguous is a matter of law that we review for correctness. See Alf, 850 P.2d at 1274. A contract is ambiguous if it is unclear, omits terms, has multiple meanings, or is not plain to a person of ordinary intelli-

---

1. Mr. Crook is not a party on appeal.

gence and understanding. *See id.* at 1274–75; *Nielsen,* 848 P.2d at 666. Ambiguities are construed against the drafter—the insurance company—and in favor of coverage. *See Alf,* 850 P.2d at 1274; *Nielsen,* 848 P.2d at 666. However, courts must enforce an unambiguous contract and "may not rewrite an insurance contract ... if the language is clear." *Alf,* 850 P.2d at 1275; *see also Woodhouse v. Farmers Union Mut. Ins. Co.,* 241 Mont. 69, 785 P.2d 192, 194 (1990); *Dolcy v. Rhode Island Joint Reins. Ass'n,* 589 A.2d 313, 316 (R.I.1991).

 ¶ 7 The Policy provision Ms. Crook asserts is ambiguous states:

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

. . . .

h. Intentional Loss, meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

The Policy defines "insured" as:

[Y]ou and residents of your household who are:

a. Your relatives; or

b. Other persons under the age of 21 and in the care of any person named above.

The word "you," as used in the definition of the term "insured," means "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." The Declarations page names Clinton Crook as the named insured. Ms. Crook, as Clinton Crook's resident spouse, is thus also an insured.

¶ 8 Ms. Crook argues that the provision is unclear because it does not clearly state that innocent co-insureds may not recover when a co-insured causes an intentional loss. She specifically argues that the words "an insured" in the provision are ambiguous:

This [provision] bars recovery for "any act" by "an insured." It does not bar recovery for "any act" by "any insured." Therefore, the provision seems to be directed at denying "an insured" from recovery for "any act" causing a loss. However it is not clear from the policy language.

She cites cases from other jurisdictions holding similar insurance provisions ambiguous. *See Allstate Ins. Co. v. Worthington,* 46 F.3d 1005, 1009 (10th Cir.1995); *McFarland v. Utica Fire Ins. Co.,* 814 F.Supp. 518, 525–26 (S.D.Miss.1992); *American Hardware Mut. Ins. Co. v. Mitchell,* 870 S.W.2d 783, 785 (Ky.1993).

¶ 9 However, when the provision is read as a whole, it is clear and directly applies. It states that Farm Bureau does not insure certain losses. One type of excluded loss is an intentional loss, defined as "any loss arising out of any act committed: (1) By or at the direction of an 'insured'; and (2) With the intent to cause a loss." The facts are undisputed that Mr. Crook caused an intentional property loss. If he is "an insured," the Policy does not cover loss from his intentional property destruction. Mr. Crook is an insured; in fact, he is the Policy's named insured. Therefore, an insured intentionally caused a loss—a loss that Farm Bureau clearly communicated it would not · insure, regardless of claimant.

 ¶ 10 Ms. Crook has specifically argued that the words "an insured" in the exclusion are ambiguous. She cites other courts so holding.[2] But when we read the exclusion with the Policy's definition of insured, "an insured" is clear:

"Insured" means you *and* residents of your household who are:

a. Your relatives; or

---

2. These courts, however, do not read those words with the insurance policy as a whole but focus narrowly on the ambiguity of the word "an" by examining its definition in various dictionaries. *See, e.g., McFarland,* 814 F.Supp. at 525–26; *Brumley v. Lee,* 265 Kan. 810, 963 P.2d 1224, 1227–28 (1998). Courts holding "an insured" unambiguous read that language with the policy as a whole. *See, e.g., Dolcy,* 589 A.2d at 316; *Chacon,* 788 P.2d at 752 (construing phrase "any insured"). We agree with those courts that read "an insured" as we do—with the policy as a whole.

b. Other persons under the age of 21 and in the care of any person named above.

(Emphasis added.) The Policy defines "you" as "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." More than one person can thus be "an insured" under the Policy. In this situation, Clinton Crook is the named insured—clearly "an insured." Rhonda Crook, his spouse and a resident of the same household, is also "an insured." Any other resident who is either a relative or under 21 and in an insured's care would also be "an insured." Thus, "an insured" in the Crooks' Policy may refer to multiple persons by definition, and intentional property damage by any insured is excluded under the Policy.

¶ 11 Clinton Crook, "an insured," committed an "intentional loss." Farm Bureau clearly communicated that it "do[es] not insure" intentional losses; thus, no insured may recover. The trial court correctly found the exclusion unambiguous and applicable; this Court must therefore enforce it.

## II. PUBLIC POLICY

¶ 12 Ms. Crook argues that reading the Policy as above causes a result that is unfair and contrary to public policy. She quotes dicta in *Martin v. Christensen,* 22 Utah 2d 415, 454 P.2d 294 (1969), that insurance policies should be upheld

unless considerations of equity and justice, or of public policy, dictate that the contract should not be enforced because of fraud, duress, mistake, unconscionability, illegality or some other such cogent reason.

*Id.* at 295; *see also Farmers Ins. Exch. v. Call,* 712 P.2d 231, 233 (Utah 1985) ("[A]n insurer may include in a policy any number or kind of exceptions and limitations to which an insured will agree *unless contrary to statute or public policy.*" (emphasis added)); *Gee v. Utah State Retirement Bd.,* 842 P.2d 919, 921 (Utah Ct.App.1992). However, "the general judicial attitude toward insurance policies is to sustain them on grounds of public policy wherever possible." *Ross v. Produc-*

*ers Mut. Ins. Co.,* 4 Utah 2d 396, 401, 295 P.2d 339, 343 (1956).

¶ 13 Ms. Crook argues that *Error v. Western Home Insurance Co.,* 762 P.2d 1077 (Utah 1988), established a public policy that innocent co-insureds should recover notwithstanding the acts of another co-insured and regardless of applicable policy exclusions. In *Error,* a husband intentionally burned down the couple's home, and the wife, an innocent co-insured, claimed coverage under a homeowner's policy. The insurer denied coverage under policy exclusions for "neglect" and "fraud": [3]

Section I EXCLUSIONS

5. *Neglect,* meaning neglect of the insured to use all reasonable means to save and preserve Property at and after the time of loss, or when the property is endangered by a Peril Insured Against.

Section I and Section II—CONDITIONS

2. *Concealment or Fraud.* We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

The trial judge, after a nonjury trial, ruled for the wife, holding the exclusions inapplicable. We affirmed, stating:

[T]he rule of law in a majority of jurisdictions is that an innocent insured is not necessarily precluded *as a matter of law* from recovering on a fire insurance policy because a coinsured intentionally destroyed the insured premises. The rationales behind this rule vary, but fall into three broad—and sometimes overlapping—categories. Some jurisdictions focus upon the insured's property interest. Others focus upon the insured's obligations under the insurance policy. The rationale that most appeals to our sense of reason and fairness, and the rationale we adopt today, is that which focuses upon the responsibility for the fraudulent act.

*Error,* 762 P.2d at 1080 (footnotes omitted) (emphasis added). In the absence of an applicable policy exclusion, the *Error* innocent

---

3. The *Error* opinion did not quote these exclusions, but they are found in the *Error* appellant's brief before this Court.

co-insured recovered because she was not personally responsible for the arson. *See id.* at 1081.

¶ 14 Ms. Crook would read the public policy in *Error* as allowing an innocent co-insured to recover despite a directly applicable policy exclusion. However, *Error* cannot be read that broadly because there was no directly applicable exclusion in that case. The trial court found the exclusions in *Error* inapplicable, *see id.* at 1079, and the appellant did not challenge that aspect of its ruling on appeal. Thus, in *Error* we addressed the question of an innocent co-insured's recovery as a "matter of law," *id.* at 1080, and not under the insurance policy. *Error* held that when an insurance policy does not contain an exclusion that clearly and unambiguously denies coverage, public policy requires that an insured who is not personally responsible for causing a loss can recover. This public policy does not extend to cases in which an insurance policy contains a specific, unambiguous provision that applies to exclude coverage. Ms. Crook's Policy contains an exclusion that clearly excludes coverage when an insured commits an intentional act; therefore, we hold that the public policy articulated in *Error* does not apply to her case. This holding in no way limits *Error*'s application to cases factually similar to it, i.e., in which no policy exclusion applies to deny coverage; *Error* would then still allow an innocent co-insured's recovery.

¶ 15 Many of the cases we relied upon in *Error* were premised on the fact that no exclusion clearly barred recovery. *See Error,* 762 P.2d at 1080 n. 6 (citing cases). For example, in *McCracken v. Government Employees Insurance Co.,* 284 S.C. 66, 325 S.E.2d 62, 64 (1985), the South Carolina Supreme Court held: *"[I]n the absence of any statute or specific policy language denying coverage* to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds." A subsequent South Carolina Court of Appeals case addressed facts similar to *McCracken,* but the applicable insurance policy specifically excluded coverage for the type of loss at issue. The court found *McCracken* "inapposite" because the policy in question specifically ex-

cluded coverage and denied a co-insured's recovery. *See Nationwide Mut. Ins. Co. v. Commercial Bank,* 325 S.C. 357, 479 S.E.2d 524, 527 (Ct.App.1996); *see also Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 751 (Colo.1990) (disregarding *Republic Ins. Co. v. Jernigan,* 753 P.2d 229 (Colo. 1988)).

¶ 16 The Policy's intentional acts exclusion is clear, unambiguous, and consistent with law and public policy. Affirmed.

¶ 17 Justice ZIMMERMAN and Justice RUSSON concur in Justice STEWART'S opinion.

HOWE, Chief Justice, concurring:

¶ 18 I concur. I agree that the policy's intentional acts exclusion is unambiguous and does not violate our law or public policy. However, I believe the conclusion we have reached today, although legally correct, burdens Ms. Crook with an unjust result.

¶ 19 I write to suggest that our legislature consider enacting legislation which would allow innocent co-insureds to recover under insurance policies despite the felonious intentional acts of spouses or other co-insureds. Many states have already created an "innocent spouse" rule of some variation. Nebraska, North Dakota, and Washington have recently enacted statutes which allow an "innocent spouse" to recover where the intentional act of a co-insured is part of a pattern of domestic abuse. *See* Neb.Rev. Stat. Ann. § 44–7406(6) (1998); N.D. Cent. Code § 26.1–32–04 (1995); Wash Rev.Code § 48.18.550 (1998).

¶ 20 For example, the Washington statute cited above allows insurers to exclude coverage for losses caused by the intentional or fraudulent acts of any insured. However, that exclusion

shall not apply to deny an insured's otherwise-covered property loss if the property loss is caused by an act of domestic abuse by another insured under the policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claim-

ing property loss did not cooperate in or contribute to the creation of the property loss.

*Id.* § 48.18.550(3).

¶ 21 Associate Chief Justice DURHAM concurs in Chief Justice HOWE'S concurring opinion.